Alfred I. Goldberger, Esq. Corporation Counsel, Schenectady
Your office has requested our opinion as to whether the City of Schenectady may enter upon private property to remove a vehicle stored in violation of the city's junked vehicle ordinance.
The inquiry notes that the purpose of the junked vehicle ordinance is to preserve the public health, safety and welfare of Schenectady residents.*
The ordinance prohibits the outdoor storage of junked, abandoned or dangerous motor vehicles, or parts therefrom.** With regard to enforcement, the ordinance provides that violators are to be served with a notice of violation, which also notifies them of their right to appeal. A request for appeal filed within ten days of service of the notice entitles the applicant to a hearing. In the event of a finding by the city's Director of Environmental Health that an imminent danger exists, the city may "promptly cause the removal of the motor vehicle . . . and the expense incurred by the city shall be assessed against the property upon which such vehicle was found, which assessment shall constitute a lien and charge on such property and be collected as provided by law for the collection of delinquent taxes" (id., § 247-9).
The first question is whether the city may enter private property to remove an inoperable motor vehicle that also is not registered in any state.
Under the Vehicle and Traffic Law, local governments may not regulate motor vehicles on the highways of the State unless specifically authorized by its provisions (Vehicle and Traffic Law, §§ 1600,1604). Local regulations must be consistent with the provisions of the Vehicle and Traffic Law (ibid.; Op Atty Gen No. 86-10).
Section 1224 of the Vehicle and Traffic Law defines and provides for the disposition of abandoned motor vehicles. Vehicles are deemed abandoned under this section if they are left unattended:
 "(a) with no number plates affixed thereto, for more than six hours on any highway or other public place;
 "(b) for more than twenty-four hours on any highway or other public place, except a portion of a highway or public place on which parking is legally permitted;
 "(c) for more than forty-eight hours, after the parking of such vehicle shall have become illegal, if left on a portion of a highway or public place on which parking is legally permitted;
 "(d) for more than ninety-six hours on property of another if left without permission of the owner" (Vehicle and Traffic Law, § 1224[1]).
Although the statute does not elaborate on the extent of the term "public place", the regulations promulgated by the Commissioner of Motor Vehicles pursuant to this section provide that local authorities "are authorized to take custody of any abandoned vehicle in their jurisdiction, whether abandoned on public or private property" (15 NYCRR § 18.1).
Initially, we note that if a vehicle meets the definition of "abandoned" as set forth in section 1224, it would have to be dealt with in accordance with the provisions set forth therein (1981 Op Atty Gen [Inf] 165).
Vehicles not included in the scope of section 1224 would be subject to regulation by the city. The general grant of police power to local governments empowers a city to adopt local laws in relation to the government, protection, order, conduct, safety, health and well-being of persons or property therein as long as they are not inconsistent with New York's Constitution or any general State laws (NY Const, Art IX, §2[c][ii][10]; Municipal Home Rule Law, § 10[1][ii][a][12]). The General City Law empowers cities
 "[t]o maintain order . . . protect property and preserve and care for the safety, health, comfort and general welfare of the inhabitants of the city [and]
• • •
 [t]o regulate by ordinance any matter within the powers of the city . . ." (General City Law, § 20[13], [22]).
In the past we have concluded that ordinances restricting parking on private property are within this police power (1982 Op Atty Gen [Inf] 130), and that a municipality may enter private property in order to enforce the ordinance (Op Atty Gen No. 86-10). In a 1986 opinion, dealing with villages, we concluded that:
 "A local law prohibiting parking on lawns is certainly defensible as within the village's police powers to further the safety and welfare of persons and property in the village. Cars randomly parked on the lawns of residences, besides creating safety hazards, may also create an unfavorable appearance that the village could legitimately wish to discourage (see City Council of Los Angeles v Vincent, 466 U.S. 789
[1984])" (Op Atty Gen No. 86-10).
The question remains, however, whether this police power includes the authority to regulate or remove an inoperable, unregistered motor vehicle, as defined in your regulations, from private property. The determination whether this is a reasonable exercise of the police power must be determined by local officials familiar with local conditions and needs. For general guidance with regard to due process concerns associated with State seizure of private property you may wish to consultCalero-Toledo v Pearson Yacht Leasing Co., 416 U.S. 663, 678-680 (1974);Fuentes v Shevin, 407 U.S. 67, 90-92 (1971) and 1981 Op Atty Gen (Inf) 229.
Assuming that the regulation is an appropriate exercise of police power, we now turn to the second part of your question, whether the city may impound a vehicle that violates the ordinance.
In the past, we have found that the impoundment of illegally parked vehicles is an appropriate method of enforcing local parking regulations (1983 Op Atty Gen [Inf] 87; 1981 Op Atty Gen [Inf] 229). We conclude, therefore, that the city, in the course of entering private property to enforce an ordinance, has the concomitant power to utilize any of its valid enforcement methods, including impoundment. Further, we believe that inasmuch as impoundment is authorized under the city's police power, it follows that under the same authority the city may assess the cost of regulation to the violators (City of Buffalo v Stevenson,207 N.Y. 258, 263 [1913]; 1983 Op Atty Gen [Inf] 87). We concluded as much in a 1983 opinion, which found that a village is authorized to charge violators of its parking ordinance the cost of securing and removing a boot-type locking device (ibid.). We find that an analogous assessment is appropriate here, whether payable to a garage hired by the city, or to the city itself (see also, Vehicle and Traffic Law, §423-a).
You have also asked whether the cost of removal may be assessed against the property from which it was towed.
Assuming that the property owner was a party to the city's ordinance enforcement action, the amount of the penalty may be added to the owner's real property tax bill. A city's home rule power includes authority to establish procedures for the collection of unpaid penalties for violations of city ordinances. One alternative that has met with approval is to add the unpaid charges to the guilty party's real property tax liability, levy them against liable real property and apply the city's existing procedure for the collection of taxes, including delinquent taxes (1981 Op Atty Gen [Inf] 182). In an earlier opinion we found that this procedure was appropriate for the collection of overdue water and sewer rents charged by a city (ibid.; see also, 1985 Op Atty Gen [Inf] 78 [village may assess unpaid sidewalk maintenance charges against property owner]). The immediate situation being analogous, it is appropriate for the penalties, towing and storage charges associated with junked vehicles to be added to the tax rolls.
Finally, you have asked whether the city may acquire title to the junked vehicle in the event the owner decides not to seek recovery of the vehicle.
As noted earlier, any abandoned vehicles governed by the Vehicle and Traffic Law would have to be disposed of in accordance with section 1224, which provides, inter alia, that inoperable abandoned vehicles must be sold to vehicle dismantlers or scrap processors registered or certified pursuant to section 415-a of the Vehicle and Traffic Law (id., § 1224[5][b]).
In addition, section 250 of the General Municipal Law gives municipalities the authority to establish "a procedure for the disposition of derelict automobiles and other property having no value or salvage value only" (General Municipal Law, § 250[c]). The relevant statutes, however, do not define "derelict automobiles". Nevertheless, in our view, this general authorization, together with the city's residual police power (Municipal Home Rule Law, § 10[1][ii][a][9-a], [12]; 1982 Op Atty Gen [Inf] 130), gives the city authority to create procedures for dealing with those abandoned automobiles that are not covered by section1224 of the Vehicle and Traffic Law. Disposal of abandoned motor vehicles is directly related to the safety and welfare of the city's inhabitants, and is an appropriate matter for regulation pursuant to the city's police power.
We conclude that a city may enter private property to remove an inoperable, unregistered motor vehicle and impose the cost of the vehicle's impoundment on the car's owner or the property owner.
* The statement of purpose reads in full:
 "The outdoor storage of junked, abandoned, unused or dangerous motor vehicles, or the parts therefrom, within the City of Schenectady is a hazard to the preservation of the public health, welfare and safety in that it constitutes a health, fire and safety hazard and is an attractive nuisance to children, which is a peril to their safety. Their outdoor storage constitutes a blight on the city's landscape, and they are generally unsightly, and their existence tends to depreciate the value of property in the neighborhood and the city generally. The control of the outdoor storage of junked, abandoned, unused or dangerous motor vehicles, or parts therefrom, within the City of Schenectady is therefore regulated for the preservation of the public health, safety and welfare of its residents" (City of Schenectady Code of Ordinances, § 247-1).
** These terms are defined by the ordinance in the following way:
 "ABANDONED — Any motor vehicle, the ownership of which cannot be reasonably determined or of which the owner does not intend to recover possession.
• • •
 DANGEROUS — Any motor vehicle which has smashed and broken windows and/or areas of sharp and torn metal edges and points and which cannot legally be operated upon a public way.
• • •
 JUNKED — Any motor vehicle which is unregistered by the State of New York or any other state and is not operable" (City of Schenectady Code of Ordinances, § 247-2).
The ordinance also prohibits storage of more than one "unused" vehicle, which are defined as "[a]ny operable motor vehicle[s] which [are] unregistered by the State of New York or any other state and/or upon which is not displayed a valid state inspection sticker" (ibid.).